**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA,

Plaintiff,

v.

OSVALDO CALDERIN-PASCUAL [2],

Defendant,

DAVID CALDERIN-PASCUAL,

Third-Party Petitioner.

Criminal No. 3:21-cr-00350 (ADC)

# THIRD-PARTY PETITIONER DAVID CALDERIN-PASCUAL'S MOTION ON REMAND FOR IMMEDIATE RETURN OF THE VESSEL, PURSUANT TO THE FIFTH AND EIGHTH AMENDMENTS AND BASED ON GOVERNMENT MISCONDUCT HEREIN, AND FOR ATTORNEY'S FEES AND MONETARY SANCTIONS, OR, IN THE ALTERNATIVE, FOR AN ANCILLARY HEARING WITH FULL DISCOVERY, AND MEMORANDUM CONCERNING THE GOVERNMENT'S LACK OF CANDOR TOWARD THE COURT

The Third-Party Petitioner, **David Calderin-Pascual ("David"),** by and through undersigned counsel, and, pursuant to the Judgment of the United States Court of Appeals for the First Circuit vacating this Court's denial of his petition and remanding for further proceedings, *United States v. Calderin-Pascual*, No. 24-1836 (1st Cir. Apr. 3, 2026) (ECF No. 357) and the Fifth and Eighth Amendments to the United States Constitution, respectfully moves this Court to order the *immediate return* of his vessel based on the government's misconduct, and for an award of attorney's fees and monetary sanctions, or, in the alternative, to set an ancillary hearing pursuant to 21 U.S.C. § 853(n)(2) and Fed. R. Crim. P. 32.2(c) with full discovery under Rule 32.2(c)(1)(B), and states as follows:

# I. INTRODUCTION

For more than four years, the government has litigated David's claim to his boat as though the time and circumstances of his acquisition of it were a mystery. In its April 25, 2024, motion to dismiss, the government told this Court that David's petition "is silent as to the time and circumstances of his acquisition of his interest in the [boat]" and therefore did "not state a plausible claim for relief." On the strength of that representation, this Court dismissed the petition of a *pro se* claimant without a hearing and without ruling on his request for leave to amend.

The recently disclosed ex parte declaration of DEA Special Agent Noel Garcia — executed on April 22, 2022, and filed under seal in support of the government's parallel civil forfeiture complaint, *United States v. One 1997 Avanti Powerboats 25 Vessel*, No. 3:22-cv-01189 (ADC) (D.P.R.), ECF No. 3 (the "Garcia Declaration") — establishes that there was ***never*** any mystery at all. By November 2021, months before David even filed his administrative claim and more than two years before the government moved to dismiss, the government's own case agent had interviewed the vessel's prior owner, obtained the bill of sale, obtained the engine purchase receipts, pulled David's tax returns, and memorialized — under penalty of perjury — the precise dates, prices, and manner of David's acquisition of the vessel, its engines, and its trailer. The government knew the answer to the very question it told this Court David had failed to answer. It simply never told the Court that it knew.

That is not how the United States is permitted to litigate. "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935). The consequences of the government's conduct

have not been abstract. On the contrary, this Court was led into a dismissal it would never have entered on a complete record; David was forced to prosecute an appeal; and the resulting reversal by the First Circuit — ***an embarrassment this Court did nothing to earn*** — is the direct product of the government's lack of candor. Meanwhile, David's vessel has sat in government custody, deteriorating, for nearly five years. David respectfully submits this memorandum so that, on remand, this Court may evaluate the government's positions with full knowledge of what the government knew, when it knew it, and what it chose to withhold — and may fashion a remedy proportionate to that conduct.

## II. PROCEDURAL BACKGROUND

The vessel — a 1997 Avanti Powerboats 25, Puerto Rico Registration No. PR2213CC, with two outboard Suzuki engines and a trailer — was seized on October 25, 2021, in connection with the arrest of David's brother, Osvaldo Calderin-Pascual. David, the vessel's registered owner, timely filed a verified administrative claim with the DEA on January 25, 2022, identifying the property, stating his interest, and attaching his supporting documentation.

On April 22, 2022, rather than responding to that claim, the government instead filed a civil forfeiture complaint against the vessel in Case No. 3:22-cv-01189 (ADC), supported by the ex parte Garcia Declaration. The government moved to stay that civil action the same day it was filed, and the matter was transferred to this criminal docket the next day. David was never served with the complaint and never notified of the declaration filed against his property.

Following Osvaldo's guilty plea and the entry of a preliminary order of forfeiture on December 19, 2023, David — acting *pro se* — timely filed his verified Petition for Hearing to Contest Forfeiture on February 29, 2024, attaching his boat property certificate, boat title and license, trailer title, and engine receipts. On April 25, 2024, the government moved to dismiss,

representing to this Court that the petition was "silent as to the time and circumstances of his acquisition." On August 2, 2024, this Court granted the motion and denied the petition without a hearing, and on August 15, 2024, entered a final order of forfeiture.

On April 3, 2026, the First Circuit vacated the denial and remanded, holding that the record did not disclose the basis for the denial of David's alternative request for leave to amend, and directing that on remand this Court "must take into account David's *pro se* status and 21 U.S.C. § 853's statutory requirement that its provisions be 'liberally construed,' 21 U.S.C. § 853(o)." Op. at 9. The Garcia Declaration — which David was forced to move, twice, to unrestrict: the first motion drawing the government's vigorous opposition, ECF No. 275, and the second met with no response from the government at all, ECF Nos. 374, 389 — has now been disclosed.

## III. WHAT THE GOVERNMENT KNEW, AND WHEN IT KNEW IT

The Garcia Declaration, sworn under 28 U.S.C. § 1746 by the DEA case agent assigned to this very investigation, recites in detail the government's *pre-existing knowledge* of the time and circumstances of David's acquisition of the property:

***First*****,** the government knew David was the vessel's registered owner from the moment of seizure. The Declaration states that when agents executed the seizure warrant on October 25, 2021, "David CALDERIN-Pascual, registered owner of the Defendant Vessel and brother of Osvaldo CALDERIN-Pascual, was identified." Garcia Decl. ¶ 15.

***Second*****,** the government knew when, from whom, and for how much David acquired the vessel. On November 10, 2021, Special Agent Garcia personally interviewed Martin Bresciani, whom the Puerto Rico Department of Natural Resources records identified as the vessel's previous owner. Mr. Bresciani told the agent that he sold the vessel "on or about June of 2017 for

approximately $27,500." *Id.* ¶ 16. The very next day, November 11, 2021, Mr. Bresciani emailed the agent the bill of sale for the vessel and trailer, together with photographs. *Id.* ¶ 17.

***Third***, the government knew when and how David acquired the engines. On November 22, 2021, case agents obtained the purchase receipt from Del Caribe Marine showing that in July 2019 David paid approximately $30,075.35 for the two Suzuki outboards — ***a purchase the Declaration states "was corroborated with four (4) receipts provided by David CALDERIN-Pascual, the now claimant, as part of his claim,"*** (emphasis added) which the Declaration then itemizes by date and amount. *Id.* ¶ 18. In other words, the government not only possessed David's acquisition documents — it had received them from David himself, verified them against the seller's own records, and found them accurate.

***Fourth***, the government investigated David's acquisition so thoroughly that it obtained and analyzed his reported income for tax years 2015 through 2019, *id.* ¶¶ 20–21, and formed the theory — which it has recently pressed in this Court (ECF 391) but never advanced in the First Circuit — that David is a "straw owner" for his brother. *Id.* ¶ 22. That theory is itself an admission: one cannot accuse a claimant of being the straw purchaser of a specific transaction while simultaneously professing ignorance of the time and circumstances of that transaction. The government's own theory of the case presupposes the very acquisition facts it told this Court were missing.

All of this was reduced to a sworn writing and filed with this Court — ex parte — on **April 22, 2022**. That is ***three months after*** David's administrative claim, ***twenty-two months before*** David's *pro se* petition, and ***a full two years before*** the government stood before this Court and characterized the timing of David's acquisition as an unpleaded unknown.

## IV. THE GOVERNMENT'S REPRESENTATIONS CANNOT BE RECONCILED WITH WHAT IT KNEW

Measured against the Garcia Declaration, the government's litigation conduct in this ancillary proceeding was inexplicable and indefensible.

The motion to dismiss framed the acquisition date as a fatal blank in David's pleading. Yet the government's own agent had already sworn that the vessel changed hands in **June 2017** — nearly two years before **May 2019**, the earliest date of any misconduct alleged in the indictment against Osvaldo and the date on which, by his plea agreement, the conspiracy began. The significance is decisive: under this Circuit's law, a third party prevails by establishing that his interest "existed before the commission of the crime that led to the forfeiture." *United States v. Catala*, 870 F.3d 6, 10 (1st Cir. 2017). **The government thus possessed sworn, agent-verified evidence that the dispositive fact weighed heavily in David's favor — and its response was to move to dismiss his petition for failing to plead that fact, while the document proving it sat restricted on a docket David could not see.**

This behavior did not end in this Court. On appeal, the government urged the First Circuit to disregard the Puerto Rico vessel registration attached to David's petition because it was in Spanish — the same registration, PR Reg. No. PR2213CC, that the government's own indictment recites, that its own agent relied upon through the Department of Natural Resources, and that its own Declaration invokes to identify David as the registered owner. Garcia Decl. ¶¶ 6, 15–16.

And when David moved in this Court to unrestrict the Garcia Declaration so that he could see what the government had told this Court about his property, the government fought to keep it hidden. In its opposition, ECF 275, the government argued that David had failed to "assert[] a viable claim," that his petitions were "[a]t best … bare assertions of ownership" that "do not state

a plausible claim for relief," and that he therefore had "not established standing to intervene" even to obtain the document. The circularity is complete: the government resisted disclosure of the declaration that answered the acquisition question by invoking the very dismissal it had procured by concealing that answer — wielding the fruit of its concealment as the justification for continuing it. A claimant's petition is dismissed as implausible because it lacks facts locked in the government's sealed filing; the claimant then may not see the sealed filing because his petition was dismissed as implausible. Only after the First Circuit's remand, when David renewed his motion, did the government fall silent, filing no response at all. ECF 374, 389. And at no point — not in its opposition, not in its silence, not in two years of ancillary litigation — did the government ever volunteer that it possessed and had sworn to the acquisition facts it claimed were missing.

The government then repeated its feigned ignorance aloud. At oral argument before the First Circuit on March 2, 2026, counsel for the government told the panel: "we don't know where he exactly got it [the boat]," and, minutes later, that there were "[j]ust not enough details about the circumstances" of David's acquisition. Oral Arg. Recording, *United States v. Calderin-Pascual*, No. 24-1836 (1st Cir. Mar. 2, 2026), at 14:25, 15:25, https://www.ca1.uscourts.gov/sites/ca1/files/oralargs/24-1836_20260302.mp3. Those representations were made to a federal court of appeals — with a retired Associate Justice of the Supreme Court participating in the decision — nearly four years after the government's own case agent had sworn, in a declaration filed in this District, to precisely "where he got it" and to the "details" of "the circumstances": the seller's identity, the June 2017 sale date, the $27,500 cash price, the bill of sale, and the engine receipts David himself had provided. Garcia Decl. ¶¶ 16–18. The government did not misremember; it had verified these facts against third-party records years

earlier. It simply told the court of appeals the same thing it had told this Court: that a fact resting in its own sworn files was a mystery.

A motion under Fed. R. Crim. P. 32.2(c)(1)(A) tests the plausibility of a petition on its face. It is not an instrument by which the government may manufacture a pleading defect out of information asymmetry it created — seizing a claimant's property, collecting his documents, verifying them, sealing its findings, and then faulting the claimant, *pro se* and without discovery, for not pleading what the government had locked away. Rule 32.2(c)(1)(B) contemplates that discovery and hearing follow a facially adequate petition precisely because the government ordinarily holds the evidentiary cards in forfeiture. The government inverted that structure here.

## **V. THE GOVERNMENT'S DUTY OF CANDOR**

Government counsel owe this court a duty of candor that exceeds that of the ordinary litigant. *Berger*, 295 U.S. at 88. That duty is at its zenith in ex parte and sealed proceedings, where the tribunal depends entirely on the government's completeness. See Model Rule of Prof'l Conduct 3.3(d) (in an ex parte proceeding, a lawyer "shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse"); L. Civ. R. 83E(a) (adopting the Model Rules in this District). The obligation of candor under Rule 3.3 is a continuing one: a lawyer who comes to know that the tribunal is proceeding on a materially incomplete picture must correct it.

Here, the government litigated a dispositive pleading motion — against an unrepresented claimant, in a proceeding Congress mandated be "liberally construed to effectuate its remedial purposes," 21 U.S.C. § 853(o) — on the premise that acquisition timing was unknown, while its files, and this Court's own sealed docket, contained the government's sworn account of that timing. Whether or not any individual representation was technically accurate as a description of the

petition's four corners, the course of conduct deprived this Court of material facts and produced exactly the result candor rules exist to prevent: a judicial decision made on a picture the government knew to be false in substance.

## VI. THE APPROPRIATE REMEDY FOR THE GOVERNMENT'S MISCONDUCT IS IMMEDIATE RETURN OF THE VESSEL

This Court possesses inherent authority to remedy litigation misconduct and to protect the integrity of its own proceedings. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991). That authority is not limited to fee awards; it extends to relief calibrated to deny a party the fruits of its misconduct and to make the injured party whole. Here, the fruit of the government's concealment was the dismissal itself — and its ongoing fruit is the continued possession of David's vessel.

The consequences of the government's conduct are now a matter of published record. ***The First Circuit's reversal of this Court — with a retired Associate Justice of the Supreme Court as a member of the panel — is precisely the kind of embarrassing appellate outcome that candor rules exist to spare district courts***. And that reversal is the direct result of the government's lack of candor: had the government disclosed in April 2024 what its own agent had sworn to in April 2022, no motion to dismiss could responsibly have been filed, no dismissal would have been entered, no appeal would have been necessary, and no reversal would have issued. The government led this Court into error, defended that error on appeal with arguments it had never presented below — a tactic the First Circuit expressly declined to countenance, Op. at 8–9 — repeated its professed ignorance aloud at oral argument, and left this Court to absorb the consequences. The party that should bear those consequences is the government.

Nor would further proceedings serve any legitimate purpose, because the government's own sworn evidence resolves the merits. Under 21 U.S.C. § 853(n)(6)(A), a petitioner prevails by

showing a vested or superior interest at the time of the commission of the acts giving rise to forfeiture. The Garcia Declaration — the government's document, sworn by the government's agent, verified against third-party records the government itself collected — establishes that David acquired the vessel in June 2017, nearly two years before the May 2019 commencement of the conspiracy to which Osvaldo pleaded guilty. The government's only rejoinder is its straw-owner theory, an accusation of nominal ownership resting on tax-return arithmetic, which the government has had five years to substantiate and has never once tested in an adversarial setting. Having procured dismissal by concealment rather than submit that theory to proof, the government is in no position to insist upon yet another round of proceedings while it retains David's property. Where the government's conduct has already consumed nearly five years and one appeal, immediate return of the vessel is the only remedy that does not reward the misconduct with further delay.

## **VII. CONTINUED FORFEITURE OF THE VESSEL WOULD VIOLATE THE EIGHTH AMENDMENT**

Forfeiture that serves in any part as punishment is a "fine" subject to the Excessive Fines Clause of the Eighth Amendment. *Austin v. United States*, 509 U.S. 602, 621–22 (1993); *Timbs v. Indiana*, 139 S. Ct. 682, 687 (2019). A forfeiture is unconstitutionally excessive when it is "grossly disproportional to the gravity of a defendant's offense." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). As applied to David, the disproportion is total: David has been convicted of nothing, charged with nothing, and — on the government's own sworn account — acquired the vessel before any charged conduct began. A forfeiture that strips an uncharged owner of property he acquired before the offense punishes a culpability of zero. Any fine is grossly disproportional to no offense at all.

The government-caused delay compounds the constitutional injury. The vessel was seized on October 25, 2021. Every year of the nearly five that have since elapsed is attributable to the government's chosen course: it filed its civil complaint and moved to stay it the same day; it never served David; it sealed the declaration that answered the operative question; it filed a motion to dismiss premised on ignorance it did not have; and it defended the resulting dismissal on appeal with rationales it never presented to this Court. The Supreme Court has recognized that the duration of a deprivation pending forfeiture proceedings is itself of constitutional dimension, assessed by reference to the length of the delay, the reason for it, and the claimant's assertion of his rights. *United States v. $8,850*, 461 U.S. 555, 564–65 (1983) (applying the *Barker v. Wingo* factors). Each factor condemns the government here: the delay is extreme; the reasons for it are the government's alone; and David has asserted his rights at every turn — administratively in January 2022, by petition in February 2024, and on appeal. A depreciating twenty-nine-year-old vessel left in a boatyard for half a decade is, in practical effect, being confiscated by attrition. The punitive character of that deprivation, inflicted on a concededly uncharged owner through delay of the government's own manufacture, has ripened into an excessive fine. The Eighth Amendment requires that it end.

## **VIII. THE GOVERNMENT'S CONDUCT HAS DEPRIVED DAVID OF DUE PROCESS OF LAW**

Independent of the Excessive Fines Clause, the Due Process Clause of the Fifth Amendment forbids the deprivation of property without a meaningful opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965); see *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Fuentes v. Shevin*, 407 U.S. 67, 80–82 (1972).

The government's conduct here offended that guarantee twice over — first by delay, and then by design.

As to delay, the Supreme Court holds that the Due Process Clause itself limits how long the government may hold seized property before affording the owner his hearing, applying the four *Barker v. Wingo* factors: the length of the delay, the reason for it, the claimant's assertion of his rights, and the prejudice to the claimant. *United States v. $8,850*, 461 U.S. 555, 564–65 (1983). Every factor condemns the government. The length: nearly five years and counting since the October 25, 2021 seizure, with no hearing ever held. The reason: entirely of the government's making — it filed a civil complaint and stayed it the same day; it never served David; it sealed the one document that answered the operative question; it procured dismissal of his petition on a premise its own files refuted; and it defended that dismissal on appeal with rationales never presented below. The assertion of rights: David has demanded his hearing at every stage — by verified administrative claim in January 2022, by *pro se* petition in February 2024, by counseled response in May 2024, and by appeal. The prejudice: a twenty-nine-year-old vessel and its engines deteriorating in a boatyard, the loss of use of the property for half a decade, and the fading of witnesses' memories and records — the prior owner, notably, could locate only a draft of the bill of sale as far back as 2021. Garcia Decl. ¶ 17.

As to design, due process requires not merely a hearing but a fair one, and fairness does not, indeed cannot, coexist with concealment. Congress gave third-party claimants a single avenue of relief — the § 853(n) hearing, *Libretti*, 516 U.S. at 44 — and directed that the statute be liberally construed to effectuate its remedial purposes, 21 U.S.C. § 853(o). The government's course of conduct converted that exclusive remedy into a nullity: it withheld the acquisition facts behind an ex parte seal, then moved to dismiss David's petition for failing to plead those very facts,

extinguishing his sole statutory opportunity to be heard without any hearing at all. A process in which the government may defeat a claimant's only remedy by exploiting an information asymmetry the government itself created and enforced is not process at all; it is its opposite. The deprivation David has suffered — five years without his property, without a hearing, and without the facts the government was obliged in candor to disclose — violates the Fifth Amendment, and the remedy for it is the immediate return of the vessel.

## IX. THE COURT SHOULD AWARD DAVID HIS ATTORNEY'S FEES AND MONETARY SANCTIONS

Where a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," the court may assess attorney's fees against it under its inherent authority. *Chambers*, 501 U.S. at 45–46. Congress has expressly waived the United States' sovereign immunity for such awards: under the Equal Access to Justice Act, the United States is liable for attorney's fees "to the same extent that any other party would be liable under the common law," 28 U.S.C. § 2412(b) — a provision that incorporates the common-law bad-faith exception and permits fee awards against the government as a sanction for litigation misconduct. An ancillary proceeding under § 853(n), though docketed within a criminal case, is civil in nature and conducted like a civil action: the governing rule directs that a motion to dismiss a petition be treated "as if it were a motion in a civil action," and authorizes discovery "in accordance with the Federal Rules of Civil Procedure." Fed. R. Crim. P. 32.2(c)(1)(A)–(B). In addition, because the government elected to commence both administrative forfeiture proceedings and a parallel civil forfeiture action against this same vessel, *United States v. One 1997 Avanti Powerboats 25 Vessel*, No. 3:22-cv-01189 (ADC), the Civil Asset Forfeiture Reform Act entitles David, upon substantially prevailing, to reasonable attorney's fees, costs, and interest. 28 U.S.C. § 2465(b)(1).

The bad faith here is documented in the government's own filings. Every dollar of attorney's fees David has incurred since April 25, 2024 — the opposition to the motion to dismiss, the appeal, the briefing before the First Circuit, and now this remand — was spent litigating a question the government had already answered under oath and chose to conceal. Those fees are the direct and foreseeable cost of the government's want of candor, and the government, not David, should bear them.

The Court should likewise impose a monetary sanction compensating David for the harm the government's misconduct inflicted on the property itself: the diminution in value of the vessel, engines, and trailer over nearly five years of storage, and the loss of use of the property throughout a detention that candid litigation would have ended years ago. When property must be returned to a claimant, the law contemplates that it be returned — not returned as a ruin. See 28 U.S.C. § 2465(a). David requests that the Court, upon ordering return, set a schedule for David to submit an accounting of his fees, costs, and losses, supported by counsel's records and a marine survey of the vessel's present condition as against its condition at seizure.

## X. RELIEF REQUESTED

The First Circuit has already vacated the dismissal. On remand, and in light of the foregoing, David respectfully requests that this Court:

(a) order the immediate return of the vessel, its engines, and its trailer to David, as a remedy for the government's misconduct pursuant to the Court's inherent authority, and because continued forfeiture would violate the Due Process Clause of the Fifth Amendment and the Excessive Fines Clause of the Eighth Amendment;

(b) award David his reasonable attorney's fees and costs incurred in opposing the motion to dismiss, prosecuting the appeal, and litigating this remand, pursuant to the Court's inherent authority, 28 U.S.C. § 2412(b), and 28 U.S.C. § 2465(b)(1);

(c) impose a monetary sanction compensating David for the diminution in value of the vessel, engines, and trailer and for the loss of use of the property during its detention, in an amount to be established upon submission of an accounting and marine survey on a schedule set by the Court;

(d) in the alternative to return of the property, set this matter for an ancillary hearing pursuant to 21 U.S.C. § 853(n)(2) and Fed. R. Crim. P. 32.2(c)(1)(B) at the earliest practicable date — the procedure the Supreme Court has identified as the exclusive avenue for third-party claimants, *Libretti v. United States*, 516 U.S. 29, 44 (1995), and the procedure afforded even to arguably deficient petitions, see *United States v. Valentin-Acevedo*, 625 F. App'x 16 (1st Cir. 2015); accord *United States v. Furando*, 40 F.4th 567 (7th Cir. 2022) — together with full discovery under Rule 32.2(c)(1)(B), including production of the complete, unredacted investigative materials concerning the acquisition, ownership, registration, storage, and present condition of the vessel, engines, and trailer, the complete file underlying the Garcia Declaration, and all communications concerning the decision to seek dismissal of David's petition;

(e) to the extent necessary, grant David fourteen days' leave to file an amended petition — relief the government itself proposed in its motion to dismiss, and as to which it can claim neither surprise nor prejudice, since the amendment will plead acquisition facts the government has possessed, verified, and sworn to since 2021; and

(f) take the government's want of candor — and the appellate reversal it produced — into account in evaluating the government's positions in this ancillary proceeding, and grant all other relief the Court deems just and proper, including such further sanctions as the Court finds warranted under its inherent authority.

WHEREFORE, Third-Party Petitioner David Calderin-Pascual respectfully requests that this Honorable Court grant this motion, order the immediate return of his vessel, engines, and trailer, award him his attorney's fees and monetary sanctions, or, in the alternative, set an ancillary hearing with full discovery, and grant such other and further relief as justice requires.

RESPECTFULLY SUBMITTED,

GEORGE T. PALLAS, P.A.
2420 SW 22nd Street
Miami, FL 33145
305-856-8580
305-860-4828 FAX
george@pallaslaw.com

By: /s/ *George T. Pallas*
GEORGE T. PALLAS, ESQ.
Counsel for Third-Party Petitioner
David Calderin-Pascual

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this date a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

By: /s/ *George T. Pallas*
GEORGE T. PALLAS, ESQ.